better, I guess. I don't know why y'all got nervous. We don't get nervous up here. We do sometimes. I think you're familiar with how our system works. You have 20 minutes each. There's a clock there in front that tells you what your time is. The amber light turns on, you have a couple of minutes. Once it turns red, you should complete your thought and stop unless we ask you to go on or you might be answering one of our questions, so you can go on a little bit more. Let's see. Our first case of the day is Tony Ray Simpson, United States of America v. Tony Ray Simpson. First, Mr. Wright. Thank you, Judge Parano, and may it please the court. My name is Matthew Wright. I represent Tony Ray Simpson, and because the government has conceded that Mr. Simpson is entitled to relief on the first issue, unless the Court has questions about that, I'm going to concentrate my efforts on the second issue. The question for the Court is whether the statutory sentencing enhancement, 18 U.S.C. 3147, applies. It does not. I'd like to make four points. Roberts. Just before you leave that first issue. Wright. Yes, Your Honor. Crime of violence is so fun to argue about. Do we only get to resolve it easily with a concession because Uribe controls, and we as a court have decided that this is a divisible offense? If we didn't say A1 to 3 were divisible, we couldn't use the modified categorical approach. Do you see what I'm asking? I do see your point, Your Honor. Does it depend on the validity of Uribe for us to be able to resolve this easily? I don't think so, Your Honor. Obviously, we continue to contend that this is an indivisible offense, but it's a both-and type of argument. Now, the courts foreclosed that issue. If we treat it as two separate offenses, A1 and A3, there's no question. Whether it's means or whether it's a separate offense, the parties did not intend for Mr. Simpson to plead guilty under the qualifying count. But I was thinking only with Uribe do we know do we are we able to look at a Shepard document, which is the one that's been supplemented. If we wouldn't, if we if Uribe didn't exist and it were indivisible, if we could only use the categorical approach, there would be no relief unless we were to say least culpable means includes a vehicle on A1 or obviously A3. You win both ways, but I'm just worried about the, I'm worried about whether we write it, depending on Uribe, if Uribe's still hotly debated. I agree, Your Honor. I think if Uribe didn't exist, what we'd be asking this Court to do is to just hold that question for another day. Obviously, it's hotly debated. And I think everybody in the Court knows that question. But you wouldn't need to resolve it in this case, because you could say, well, if it's a separate offense, if it's divisible, the document's resolved in the defendant's favor. If it's indivisible, this Court's precedent resolves in the defendant's favor. So I suspect, but I don't want to talk you out of any way that I can win, so. No, that, thank you. But I don't think you would need to resolve the Uribe question if it were somehow opened back up. So moving on to the second issue, whether the 3147 enhancement applies, I'd like to make four points today. First, if the Section 3147 statutory enhancement doesn't apply, then Guideline 3C1.3 does not apply. Second, the statutory enhancement unquestionably aggravates the defendant's statutory punishment range. Third, because the statute aggravates the punishment range, then the Sixth Amendment requirements apply. And fourth, the government elected not to prove the elements of the statutory enhancement in this case. Therefore, if the statute doesn't apply, if the statute doesn't apply, the Guideline adjustment doesn't apply. You say it's an apprendee issue, and the district court orally pronounced a separate six-month sentence. That's not reflected in the judgment, which is a whole other issue. But let's say it was reflected in the written judgment. And you're challenging that extra six-month sentence on apprendee grounds. Isn't it even a simpler analysis? Because my understanding is if the written judgment had reflected the oral pronouncement, the judgment would have basically had two separate sentences, the underlying firearm sentence and then this separate six-month sentence. I mean, isn't that an entirely separate conviction that as a basic matter of Sixth Amendment law, you have to have a jury decide it? You don't even get into maximums and all this apprendee stuff. Yes, Your Honor. I think that's correct. Now, what we haven't really taken into account If the written judgment did not reflect that, then why isn't it just within the — because it's within Guideline's sentence, why isn't that permissible? Your Honor, it's not permissible because the Guideline, this particular Guideline actually depends on that separate statute to worry whether it's a separate crime or just an enhanced version of this crime. The Guideline depends on it. And it's kind of unusual in that sense, right? Typically, what you would find in a Guideline is an entirely separate proceeding. The judge operates within the box of the PSR, finds facts, applies the Guidelines. But there are a few provisions, such as the Guideline governing 924C, which was applied in this case, and this one, which do not ask the judge to make an independent factual finding, but instead say, look at the judgment or look at the conviction, look at the count of conviction and apply it. That's what 3C1.3 says. It says, if a statutory sentencing enhancement under 3147 applies, apply this one. Forgive the morbid metaphor, but the Guideline enhancement and the statutory enhancement are like tandem skydivers. You do not get separate outcomes for the two different propositions. So in this case, the Court applied the 3147 enhancement. I don't think there's any question about that. On page 800 of the record, the Court overruled our objection as to both. Why isn't it like all kinds of sentencing enhancements where in a gun case it says, oh, and if the gun the felon possessed was used in connection with another offense, like robbery or assault, increased by four levels? That doesn't require a conviction and it's not with an apprendi in that situation to say, well, there's the judge makes a factual determination that the gun was used in another offense, I'm going to add four points. Here the judge makes a factual determination, this occurred while the defendant was on pretrial release, I'm going to add a few, I think, three points. Judge Costa, if this Guideline had that language, if you find this was committed while on pretrial release, add three levels, I would have no constitutional objection in that case. What's the difference? The difference is that the Commission has chosen to tie the application of the Guideline to this specific statute or separate crime. So it is constitutional error to apply the statutory enhancement. It is Guideline error to apply this provision without the statutory enhancement. I mean, there is first the mootness question in that the — I mean, I see how you're saying it unravels the enhancement, but just there is no 3147 consecutive sentence that was given here. So that just creates a very unusual wrinkle, which you may be about to unpack. But what about our — the Dyson decision? Isn't that? The Dyson decision is dicta, Your Honor, as the Third Circuit recognized in the Lewis decision. But in Dyson, they say we are following our precedent, and it's an extended discussion of the issue. And then it comes to the conclusion that Apprendi doesn't apply because of our precedent. That's — So two things about Dyson. First of all, it is dicta, and I'll explain why. And second, if it's not, it's overruled by Alain. So it's dicta because if you take the final proposition we're arguing about here and it says Apprendi doesn't apply to 3147 and negate it, reverse it, the outcome in Dyson is the same because the defendant admitted all of the facts necessary to apply this enhancement. After all, that's the whole point of the Dyson dispute. When you plead to one, you automatically trigger the other. So it's not necessary to the outcome of the decision because you can negate it, and you come up with the same outcome. It was a guilty plea case. It wasn't a trial, and it admitted all the facts necessary. So in that sense, it's dicta. Also, the Court itself said we continue briefly to go into this digression, right? You do not continue briefly to express a holding of the Court, right? This is just — it's just basic dicta. But let's say that it's not. Let's say that somehow this becomes holding, even though it's not outcome determinative in that case or even necessary to the decision. It's overruled by Alain because Justice Thomas, writing for the majority of the Court, says if a statute aggravates the punishment, if it aggravates the punishment, if it makes it longer as a result of statute, then the Sixth Amendment requirement applies. So if we do give Dyson the force of holding, I don't think it should, it's overruled by Alain, and unequivocally overruled by Alain. Remind me what year Alain was announced. Do you know? I do. It was — The appendix sentence does have a footnote with some supporting authority, but you're probably right that it's before Alain. 2013, Your Honor. It was June 17th, 2013. But how is this — Alain's about minimums. I mean, going back to what I said at first, I think if the separate six-month sentence had been issued in the judgment, I see that as a serious Sixth Amendment problem. But it's not a question of a mandatory minimum. Your Honor, I think Justice Thomas and the Court, again, writing for the majority, addresses that question specifically. And this is on the pages 2162 and 2163, where he says, you know, if the defendant is convicted of a simple version of the offense that has two to four years of assault, but he — the judge treats him as convicted and sentences him for aggravated assault, where it's two to ten years, even if he gets a four-year sentence, that's a violation of the Sixth Amendment. It is a violation of the Sixth Amendment to convict the defendant and sentence him for an enhanced version of the offense, even if the sentence happens to fall in the overlap. So Alain, I think, addresses that point squarely, head-on, that if you sentence someone for an aggravated version of the offense and that is not supported by a jury verdict, it's a violation of the Sixth Amendment. So I think that's one way that it's a violation. The other thing I would say is, if the Court agrees with me — and it sounds like at least Judge Costa, Your Honor, I'm happy to hear it — if you agree with me there's no 3147 enhancement in this case, well, then you need to reverse. I mean, we've already said we're going to reverse anyway. But if the 3147 enhancement doesn't apply, Judge Lynn ought to have an opportunity to know that. That wasn't what the government argued below. They argued absolutely this applies and we didn't have to prove it to the jury. Does anyone know what happened between the sentencing hearing and the written judgment, why the six months is not included? The record is silent as to that, Your Honor. There was no communication with the court or probation or anything? Not for me. Once, if there is agreement now on the Texas burglary, so we remand, the real question is the scope of the remand. Correct, Your Honor. So you're saying she has to have — would you say — let's say we just vacate remand, how would you interpret the default rule to be in our court? Would she be able to revisit the whole package and correct and even give the six-month consecutive? Or is there a default rule, and if there isn't one, what would you like to see the scope of the remand be? If there's an area of this Court's jurisprudence more difficult than crime of violence, it's got to be the mandate rule. So I hesitate to say what it would — the default rule would be without seeing the mandate. Our position is always going to be it would violate the Sixth Amendment to apply the statutory enhancement, and it would violate Guideline 3C1.3 to add those three levels in without the statutory enhancement. So what we're asking for is the Court to reverse the application of the 3147 enhancement. That was unquestionably applied in the Court below, in the oral pronouncement at least. It was also an assumption of the sentence. So we would ask this Court to reverse and to say — But I would think you'd be saying we don't have authority to reconstruct what is the judgment that in that sense is in your client's interest. Right. I don't — there's no way that the six months can come back in. There's no way. What's your authority for that? Sometimes you talk about sentencing as a package, and then when you vacate it all goes back. Well, in this case, I think Greenlaw — whatever would have been the position at the time of the judgment, the written judgment is entered, right? Maybe the government comes along and says, oh, this is a clerical error or something like that. Today, they can't get it back. They can't get it back because they didn't cross-appeal, and Greenlaw says the cross-appeal rule is something that binds this Court and what this Also, I would point out that the government's harmlessness argument explicitly leverages the absence of this six-month sentence. It says you should affirm at least this aspect of the sentence because it's not in there. Now, that is not something that tactically you're allowed to do, right? It's to leverage something that may have been an omission. It may have been a purposeful recognition. I suspect, whether it was purposeful or not, this happened because there is no separate count of conviction. There is no separate jury verdict. So maybe there's a form that you fill out where you put each sentence. This is a very strange sentence, I agree. But the problem is that this was not treated as an element of an aggravated offense. Had it been, we wouldn't be here today, at least not on this issue. Maybe we'd be here on the burglary issue. So I think that the sentence should be reversed. It should be vacated. And we think this Court should hold, right, that the Sixth Amendment requirements apply to the elements of 3147 because it enhances the sentence. If I were to say that I'm persuaded by Dyson or feel controlled by it, what portion of your request for relief can you still urge? If you are persuaded by Dyson... If 3147 isn't a separate crime, doesn't implicate imprendi, and yet now the government isn't urging it, you still say the guidelines makes it inextricably the parachute example so they wouldn't be able to get the enhancement. That's where you'd be. That's where you want to be. That is where we'd be, Your Honor. And I think that's, there's no other way around it, right, is that it's essentially a waiver-type principle on the government's part. So again, I don't know, maybe Judge Prado, I want to convince you that this Sixth Amendment... What if, okay, these don't apply, but it goes back and the judge says, okay, there was no jury finding. These three points for upward departure possibly aren't available, but by golly, I know that you committed some crimes while you were on pre-trial release, so I'm going to give you a stiffer sentence because you did this even though there's no finding. Is it something that the judge could use as a reason for an upward departure or for a guideline or even if it's not outside the guidelines at the top of the guidelines and give a stiffer sentence outside of any finding by the jury or the three points for committing this crime? Does the judge, the guidelines are guidelines. Does the judge have the authority on her own to give a stiffer sentence? I think there's no question that she does. You know, so long as she's not applying this by another name, right, a rose by another name sort of thing. Other than that, there's no question this is something that could be considered in the 3553 analysis and even within the guidelines as to where within the range it would fall. I don't know there's a guideline departure that would capture it, but certainly a variance or a sentence within the guideline range, but that's not what happened below, right? The court was following the guidelines. What our position is is that the statutory enhancement can apply and the three-level adjustment can't apply. Once those guidelines are properly calculated, at that point we can address to the court how to take into account this fact, just like any other fact. Again, just to go back to the question about the issue the government's conceded, the crime of violence, what do you believe the standard of review is, given that your argument relies on this new document that wasn't presented in the district court? Your Honor, I think the court could fairly treat this as preserved, as it's an objection to the crime of violence enhancement. I see that my time has expired. If I could very quickly say if the court doesn't say that it's preserved, we said in the briefing there is this sort of plain error light doctrine where there's a related objection that's raised. In other words, it's not like we sat on our hands silently, you know, or sandbagged anyone. We fought tooth and nail against the burglary enhancement. The judge said it's a closed question. So it's — everyone was on notice that these documents were going to matter, that this enhancement was challenged. And so in that sense, even if plain error is applied, we'd ask for what I call plain error light or a more searching review is what the court's actual language is. And we think that would be the standard of review on question one. I'll preserve time for rebuttal. Thank you, Your Honor. Ms. Wright. Ms. Grand. We've heard what is Wright, now we'll hear what is Grand. May it please the Court. The appellant would have you believe that the issue of the 3147 enhancement is divisive and unsettled. And that's simply not the case under this court's well-established precedent. And Your Honor's question going back to what cases is Dyson relying on to reach that conclusion is answered by United States v. Jackson. All the way back to 1989, this court found that Congress's intent was to impose 3147 through the assimilation in the guidelines. It is nothing more than a sentencing enhancement that leads to a three-level increase in the offense level and is not a separate offense or element of an offense. Well, it's a peculiar guideline, though, in statute. I've never really seen anything quite like it. If the judgment had reflected the six-month sentence, that would be a separate entry on the judgment, right? It would be a separate line. Two separate consecutive sentences. But it would not, if he's convicted five years from now, it would not count as a separate conviction? That's correct. It is not a separate conviction. What authority says that, Your Honor? Other than Jackson and Dyson, essentially every other circuit to look at this issue with the exception of Lewis, where it was actually charged as an offense, has found that this is nothing but a sentence enhancement. It is not an offense. It's not an element of an offense. And the Guidelines Directive to apportion the sentence in order to effectuate the mandate of 3147 is nothing more than an allocation of the total punishment between the underlying offense and the discretionary enhancement. Do you know of anything else like this where a sentencing enhancement results in a separate consecutive sentence? If you look, there are, if you look at Samuel, which is the D.C. surrogate case out of 2002, footnote 12 of that case lists offense characteristics that can also be charged as separate counts of conviction. So in that case, it's giving you the juxtaposition between here are the facts that the district court can find that may influence its discretionary range of punishment. But look, these can also be invoked in a statutory fashion and lead to a separate offense of This happens all the time. You have an offense. The judge gets to consider all of these sentencing factors, and those factors play into its discretion to impose a total punishment. And just because there's a statute that also criminalizes that conduct and may lead to additional punishment doesn't mean that the enhancement itself is subject to Apprendi or Aileen. Let me ask you one thing that's, again, how odd this is. It's my understanding that the district court didn't correctly apply the commentary. Does the government agree? I'll tell you what my reading of the commentary is. You add in this enhancement to the total guideline sentence, but then you basically take part of it off and make it this separate consecutive sentence, whereas here, at least orally, I know the judgment doesn't reflect this, but orally the district court added in the enhancement to the guideline range, but then didn't reduce the guideline but added the six months. Is that proper, putting aside the issue of the written judgment? I would say that she didn't go through the formal apportionment in this case, but that doesn't result in error. And I will point you to the Seventh Circuit decision in Parolin. And in that case, the judgment was pronounced exactly as it was here. You had a total of 188 months concurrent on three counts, and I'm tacking on, I believe it was six months for the enhancement. And the appeals court in that case looked at the total punishment of 194 months and said that is well below the statutory maximum for your counts of conviction. So even if there wasn't a specific apportionment for the enhancement, it did not violate apprendee or ailing in that case. But there's no question that the guidelines do ask the court to look at the sentencing range, including the three-level offense increase, and to carve out a portion of that punishment to effectuate. And that carve-out didn't happen. That's correct. But that wouldn't be The court was carved out but not taken out. Right. It wasn't explicitly carved out at the sentencing hearing and obviously in the resulting judgment. But that carve-out is intended, as Application Note 1 says, to effectuate the mandate of 3147. 3C1.3 acknowledges that there's mandatory language, and it's asking you to impose this additional punishment in a consecutive nature. And the only way to accomplish that through the guideline enhancement is through this apportionment mechanism. Did the case law on 3C, on the enhancement, disengage the two? Do you know of any cases where sentencing courts have given the enhancement but not found 3147? I do not. Typically, because the It's your position that that's permissible here. It happened by virtue of the accident on the written judgment. I'm sorry. I don't understand. But the government's position would have to be here since the written judgment doesn't have the consecutive sentence. You can't work backwards to undo it from the absence of that predicate. In this case where 3C1.3 was applied because the court found 3147 was violated, then it was entitled to apply the three-level increase in the guideline. Had the district court said what the written judgment ultimately reveals, that I don't find 3147. Could the district court give the 3C1 enhancement still? No. We would have to find the 3147 applied to apply 3C1. But yes, I see you heard my question, Supposing Counsel. If the government's, you know, very commendably come up with this document, I think, sua sponte, it's wonderful lawyering that on the Uribe question, when I think of it, you know, you're saying it is plain error, crime of violence doesn't exist, remand back. How would you write the scope of remand? Would the district court be able to conform the new written judgment to what it found on 3147? To its oral pronouncement? Yes. We believe it would by virtue of the fact that that finding on 3147 is a sentencing factor, no different than any other offense characteristic that the court would have to take into consideration with the 3553 factors and look at its entire universe of sentencing factors to decide what the total punishment should be. By virtue of the Default rule on sentencing remands. If we don't address it, we reverse and vacate. You think the district court, it's a full package, they can, she can No, but I think they're permitted to rely on the, assuming this court finds the application of 3147 through 3C1.3 was proper, the court would be entitled, despite the conflict in the written judgment, the oral pronouncement, which controls, was made to In the area of law, it's a little tricky. If we find the oral pronouncement ambiguous, then they can revisit it. But if it's just a stark conflict, I thought, I thought the written judgment. That the oral pronouncement is not ambiguous. And I would point the court to the record at pages 818 to 819, where the court specifically imposes the enhancement and would be permitted to revisit it sentence under it's clear, unambiguous oral pronouncement that it's imposing a concurrent term on the first three counts, the additional term on the enhancement and the judgment simply reflected to, simply failed to reflect that additional six month term. You think, I mean, would that qualify as clear error if the parties had seen it right away, which would, would the district court have had its own authority to? Absolutely. The government could have filed a motion to, to correct the judgment and didn't in this case. I'm not sure the record is unclear as to why, but upon remand, particularly where you're remanding only on the crime of violence issue, we have a new base offense level, but the district court is permitted to apply the same enhancements it applied the first time around, which would include the 3C1.3 three level increase and the resulting guideline range. What's your best, can you think of, you're both superbly prepared. What's your best authority for that scope of remand? Can you think, do you find one? I can't, but I would be more than happy to submit a 28J letter to the court later today with authority for that. But the government would, would assert that upon remand on a, on an enhancement issue, the court's entitled to rely on other enhancements that were already made and properly made at the original sentencing. I would like to also address the appellant's issues regarding ailing, unless the court would like to discuss Apprendi further. I'm a little confused and you covered that, I think, but, but, um, if you could explain to me a little bit more, I'm a little concerned about, is there, there's not some check on, on double punishment. In other words, you add three points to the guidelines. So that increases the punishment if the judge is going to, and then on top of that, you, you have up to 10 years consecutive, but there's a check to make sure you're, it's not a double punishment. It's, it's one or the other. And in the Fifth Circuit and in five other circuits that have been considered it, they can, they look at the assimilation and I'm quoting the First Circuit in Randall on that term, the assimilation of 3147 through the guidelines, that is how it is effectuated. It is not a separate offense charge element of conviction. It results in nothing more than the three level increase and does not subject the defendant to this 10 year increase. Lewis is the only case where the government charged the enhancement as an additional term of imprisonment. And when you elect that path and that use of the statute, it's not being applied through the guidelines. The guideline enhancement would not apply in that case. And so it's sort of an either or bid, but the vast majority of courts that have considered this view it as a sentence enhancement only. And there's no additional term imposed because it's not a separate offense or element. The U.S.  There's nothing on it. There's no guidance on that, but I would say that the consistent approach so far has been to employ it as a guideline enhancement as opposed to a separate count of conviction. And the court in Lewis found that it was not a separate offense. You would have to use jury interrogatories or some sort of bifurcated trial to get your jury finding or specific guilty plea to the facts in support of that additional term. That's a very unique set of facts that we haven't seen since that time. And otherwise it has been consistently applied through a three level enhancement. Aside from the Apprendi, Alene, all that argument though, given how the oral pronouncement worked here, it was double counted because it increased the guideline sentence and then there wasn't the full carve out in it, but it resulted in this separate six months. It was essentially counted twice. Would that be error if the written judgment reflected that? I would disagree that it was double counting. I do think that the way the court stated it did not make that specific apportionment, but the court, the guideline range I believe was 57 to 71 months. The resulting concurrent sentences were 60 months. That six month increase was still well within the original guideline range as the commentary instructs you to stay within. So now you have a 66 month term well under the 71 month advisory cap. And even though the court didn't do that specific carve out, there was no double punishment that included the three level increase. And then I could see if it was a 71 month sentence and then she tacked on six months, you might have a different argument. But here, even with the six month enhancement, she stayed well within the advisory guideline range with the three level increase. So you're saying look at the total sentence, even though the 60 months would be above guideline if it weren't. Right. And that's what the court in Parolin did. They looked at, here's your cumulative. I think it was the complicated, I have to say. I mean, the fact that we're sentencing, I mean, it's just, that we're sentencing defendants, it shouldn't be this complicated. It's not your fault. And the guidelines, I believe, are honestly trying to simplify that. They really do look at it as, look, you've got this statute that tells you to do X, Y, Z. This is how we're going to effectuate this. It's a recidivist trait. It should be an offense characteristic only. We're going to give you a three level bump and then the court does what it does with that, and it tries to really streamline that process, and it's only as Apprendi and Ayling have come out and you try to reconcile the facial language to the statute versus how it's clearly just applied as a sentence enhancement that it gets more complicated. Would the revocation be going on parallel to all of this? The revocation was going on at the same time. That's a third here. Oh, okay. So you would have, and in this case, I would just highlight that the judicial fact finding is not really fact finding because it's plain from the docket. The court and Randall recognized that the defendant, even if it wanted to contest the fact that it wanted a jury finding on the fact that he was on pretrial release, couldn't contest that fact. You have docket entries that show the original indictment, the date of pretrial release, and a superseding indictment. What happens if you get to sentencing before the revocation hearing? Is there any collateral aspect to the finding of the violation? I'm not sure. I do. You have a sentencing hearing about whether the enhancement applies in 3147, and the court makes findings, and at the same time, you have the revocation hearing, and there's one control. As to whether that offense justified revocation at pretrial release. The revocation in this case occurred well before sentencing, so it wasn't an issue, the hearing had occurred, pretrial release was revoked. It was a pretty clear cut issue that less than three months after he was let out, he was picked up again for counts two through four, and it wasn't. If you don't mind jumping, just because it's helpful to me, you saw the court issued Uribe yesterday. Yes. So, and we have a bunch of cases raising this issue. We will continue to have them. Yes. I guess my broadest question is, do you know of any clearest circuit opinion that's interpreting the means elements distinction in Mathis? Anywhere in the country, the best court's effort to wrestle with what it means for crimes like Texas burglary? Other than Uribe? Well, put Uribe aside. I don't. Again, that would be something I would be happy to submit to the court later. No, no, no, looking at Uribe. We obviously believe Uribe was correctly decided. Uribe doesn't decide within a one though, right? It's a one, two, and three. Right. And simply decides that the statute is divisible and a one is still generic burglary. And if Uribe were wrong, you heard my question, would this case be as easy as it is given your concession? You would have to go deeper into the appellant's contentions about burglary of a dwelling, which we believe has been resolved by United States versus Herald, and you would have to look at United States. Herald's back with us. It's back, but not on that issue. And you have Garcia-Mendez too, which found that the statute, again, was not overbroad. So we have several decisions that have come into play that find that the Texas statute is not overbroad. Even aside from the divisibility inquiry, it would obviously be a much more lengthy discussion about the breadth of that statute and what it covers. The Iowa statute in Mathis was substantially broader than the Texas statute. It dealt with storage and safekeeping of property as opposed to dwellings. And is this distinguishable on that basis alone? But it would clearly be a much more lengthy discussion if Uribe had not been, if the mandate had not issued yesterday. On your concession, you say it's plain error review, but you concede it should be reversed. What's the government's position on the fourth prong? Why does it meet the final requirement? The government obviously conceded the first two prongs, in this case, rightfully so, and believe the third prong under Melina Martinez was met, given the guideline range. We do believe that this Court is starting to revisit some of its fourth prong analysis, and I would point you to Solano-Hernandez that came out just a couple of days ago. And in that case, the Court specifically said, we have declined to exercise our discretion to notice sentencing errors when the facts involve recidivistic behavior. And that is the classic, this case is a classic example of recidivistic behavior. You have a case where the defendant was picked up with distributable quantities of marijuana, two loaded handguns, one of which was stolen in less than three months of being let on pretrial release, was picked up running a trap house with another stolen handgun, and as the district court found, engaging in the same course of conduct that he was engaged in prior to his pretrial release. That set of facts, combined with his criminal conviction record, which involved three prior offenses for marijuana possession, he has offenses for another possession of a stolen handgun, all of those factors would certainly influence this Court's discretion to remand on the fourth prong or not. It would seem to be a classic example of recidivism where the Court could very well say, under plain error review, we're not going to remand. That being said, that's obviously left to the Court to weigh those factors, but we do believe that Solano-Hernandez would influence that inquiry. That's a published decision just from a few days ago? It's from January 26th, and it's a published decision in this Court on page 10. We haven't – I'm sorry, go ahead. Okay. We're – you've probably seen our Court's been criticized for avoidance of factual issues on plain error. There's been some criticism of us where we were even before that decision. You're saying that extends our no miscarriage of justice law? It certainly asks the Court to not intertwine the third and the fourth prongs and find an automatic showing of a miscarriage of justice just because you have a discrepancy in guideline range. It permits it – it permits the Court to say, sure, we have a guideline range that's different, but under the facts of this case, we're going to find that remand's not as distinctly than it has up until now. A lot in the little case? I see that my time has almost expired. If the Court does not have any additional questions, we would ask the Court to affirm the district court's application of the 3C1.3 enhancement on remand following the crime of violence reversal. Thank you. I guess I will talk about the burglary enhancement, Your Honors, if that's an issue. We didn't want to contest it. This is the government's evidence, right? It was essentially presented as false, right? Now, I didn't catch that at the time. It was a squiggle. It wasn't until I looked at appeal next to each other. But this motion that the government brought up confirms what the documents, once you look at them, see. The government presented false evidence to the district court about a conviction from 1997 when this defendant was 17 years old. As we pointed out below, this conviction qualified for points under the guideline and therefore for the enhanced base offense level barely by the skin of its teeth. This is not an issue where there was repeated behavior in terms of the burglaries of the prior convictions. The fourth prong is satisfied here without question. That said, the government's been great about this on this issue, right? Where the squiggles were in talking to people and figuring out if that's really what happened. But this made a huge difference. More than bottom end, about two years. Top end, about three years on the guideline range is going to be put in for something that we all agree. Let's leave that aside. Take out the documents again in return to your question, Judge Higginson. Your argument is wrong. It's just wrong. The Texas state courts say these things are not, unanimity is not required for these two means, right? So looking at it that way too, and Judge Lynn recognized that's a close question in this case. So if we leave aside the documents, right, the issue that we actually raised, then we could maybe take up the array again on bonk. I understand the court didn't want to do that for whatever reason in that case, but you should reverse on the burglary thing. I understand the government is still calling for that, but if that's not the case, I strongly urge you to do that. I think my read was we asked her the question about fourth prong. She's alerting us to some law that's wrong. And I agree. There was a case recently. There are cases. It's a discretionary factor, and there are cases that say sort of you're a bad guy, so we're not going to do it. But you look at both the nature of the error under this Court's precedent and the effect of the error, and for all of these reasons, right, it's big. You also combine it and you look at the correct range. So you need to consider the 3147 issue as well when you're deciding under the fourth prong, right, that it's not just those two or three years difference, but you add also the three levels that were erroneous under 3147. Can I write that there's at the same time the revocation's going on, no, no, and so you could have inconsistent findings? The revocation preceded the sentencing in this case. But I do want to point out something that wasn't clear from the record. The revocation finding is made by a preponderance of the evidence. That's our motion to supplement, made by a magistrate judge, not the same as a finding by a jury beyond a reasonable doubt. But it would be the same as a sentencing judge's preponderance finding at sentencing. I say preponderance. I may have misspoken. It was probable cause. The judge's actual finding was probable cause that he violated the conditions of supervised release. So I apologize if I misspoke. Also, the jury didn't hear any of that evidence. If anything, the jury was told it doesn't matter when the second offense was committed. You don't have to worry about that as long as it was approximately when it says in the indictment. Nothing about pretrial release. It's not a situation, right, where the defense counsel won't want them to hear it. You'd have to have some bifurcated system. I'm not sure that it needs to be bifurcated. Just like any other enhanced offense, they're going to charge the elements of that. So maybe we work it out like an old chief stipulation if it's an issue where we didn't want them to hear it. In this case, Mr. Simpson disputed everything, every element, every charge. It's all false. It's his position, right? So he's not going to lay down on any of this, including this important statutory enhancement. So the Sixth Amendment requires it. I also, if I could just return to the text of the 3147 statute, the reading the government has urged this Court and the one that's suggested by the dicta in Dyson cannot be reconciled with the text of the statute. It's also inconsistent with the government's position at the Supreme Court in the Dean case on 924C, right, where they say the in addition to language means you do this guideline range and figure out what you're going to sentence on, and then you add this in because of the in addition to language. In addition to the term for the underlying offense. Is the government right that the weight of authority, though, from other circuits On the 3147 enhancement, yes. I think most of these are guilty plea cases. Most of them are cases like Dyson where it's on 3146 or something where it's admitted anyway. You do not find, at least that I found, since Alain, a case with a trial where every element was contested. And the Court says even though the statute very clearly says up to ten years in addition to the punishment, the guidelines, I'm not sure that the reading of 5G1.1 is right. It says statutorily authorized maximum sentence. And so 3147, by its plain text, adds ten years to the statutory authorized sentence. So I don't think you could cut it down. Imagine we only had the marijuana conviction, a five-year sentence, and the guidelines before you did the 5G cut down said 360 months to life. The government's position seems to be that the district court would not be allowed to give more than 60 months. That's not what the statute says. It's just wrong. Read the statute for what it says and apply the Sixth Amendment jurisprudence from the Supreme Court on its terms, and we have to win on both issues. In writing the brief, I'm just curious. Is this sort of the perfect example of being able to stick an image in? It was. Putting in the squiggle? It was. And like I say, part of that was I didn't catch it before, but I think it is. And, again, the government also said maybe it looks like a mistake in the copy when you look at the copies in court. Then you realize they're different squiggles, and, yeah, I was happy to be able to do that. If there are no further questions, Your Honor, we'd ask the Court to reverse vacate the sentence. Thank you. Mr. Wright. Mr. Grant, thank you. Is Celia Rhodes here? Stand up. I understand it's your birthday today. It is? And your judge didn't give you the day off? You must work for a tough judge. That one over there. Well, I think we're all going to sing happy birthday to Celia. So let's all stay standing. We're going to sing to you.